```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF INDIANA
                        HAMMOND DIVISION
```

| | |
|---|---|
| DONALD CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   NO. 2:10-CV-146 |
| | ) |
| OFFICER RYAN OLSON, | ) |
| individually and in his | ) |
| official capacity, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment and Designation of Evidence, filed by Defendants, Officer Ryan Olson and City of Crown Point Police Department[1], on February 17, 2011. For the reasons set forth below, this motion is **GRANTED**. The clerk is **ORDERED** to close this case.

BACKGROUND

On February, 12, 2010, Plaintiff, Donald Campbell, initiated this case against Defendants, City of Crown Point Police Department and Officer Ryan Olson, arising out of Campbell's April 21, 2008, arrest. Plaintiff alleges false imprisonment and false arrest claims under both Indiana state and federal law. Plaintiff also

---

[1] The City of Crown Point Police Department has since been voluntarily dismissed from this case. (DE# 24).

-1-

alleged a failure to train claim against the Crown Point Police Department. In April of 2010, this case was removed here.

Defendants filed the instant motion for summary judgment. While this motion was being briefed, the Plaintiff voluntarily dismissed the Crown Point Police Department.

DISCUSSION

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"  *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial."  *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

The largely undisputed facts are as follows. On April 13, 2008, Officer Olsen was dispatched to the home of Plaintiff's daughter, Carly Campbell. (Aff. Olsen ¶ 3). After arriving, Officer Olsen spoke with Carly and her step-father, Carl Loomis. (Aff. Olsen ¶ 4). Carly informed Officer Olsen that she was fearful of her father, Donald Campbell, and presented Olsen with a court order dated October 28, 2003, requiring any communication between Carly and her father to be only at the direction of a therapist. (Aff. Olsen ¶ 5; Aff. Carly Campbell ¶ 5). Carly and her father were not engaged in therapy at that time. (Aff. C. Campbell ¶ 6).

The court order Officer Olsen was presented with was dated October 28, 2003, under Cause No. 45D05-0201-DR-10, which stated:

> The Court Orders that if Father wishes to establish communication or visitation with his youngest daughter Carly, he will proceed as follows:
>
> a. Arrange for a licensed family therapist who is convenient to Carly in location;
>
> b. Be solely responsible for any costs associated with the therapy; and
>
> c. Strictly follow all instructions of the therapist.
>
> ***
>
> All communication and/or contact between Father and Carly shall be strictly directed by the therapist.

(Ex. F, ¶ 8).

There is no expiration date identified on the face of the order. (Ex. F). It states that "[t]his Order is enforceable by all remedies provided by law including contempt and that it remains in effect until modified or dissolved by the Court." (Ex. F).

Carly informed Officer Olsen that between noon and 2:30 p.m. her father called her cell phone and left a voice message stating he would be outside of her building waiting to see her. (Aff. Olsen ¶ 6; Aff. Carly Campbell ¶ 7). On that day, Officer Olsen filed a Probable Cause Affidavit with the Lake County Prosecutor's office stating that Donald Campbell violated a protective order with the Cause Number 45D05-0201-DR-10. (Aff. Olsen ¶ 8). Based upon that affidavit the Lake County Prosecutor approved an Information, alleging that Donald Campbell committed the Class A Misdemeanor of Invasion of Privacy. City of Crown Point Judge, Kent Jeffirs, issued an Arrest Warrant for Donald Campbell on the charge of Invasion of Privacy. (Aff. Olsen ¶ 9; Ex E).

In the morning of April 21, 2008, Officer Olsen observed a white dodge van belonging to Donald Campbell in the parking lot of Citizen's Financial Bank. (Olsen Aff. ¶ 10). A computer check revealed that Campbell was wanted on an arrest warrant through Crown Point City Court for invasion of privacy. (Olsen Aff. ¶ 11). Officer Olsen went inside the bank with Officer Sprague and they observed Donald Campbell standing near a desk. (Olsen Aff. ¶ 12). The officers approached Donald Campbell and asked him to identify

himself. (Olsen Aff. ¶ 13). Donald Campbell identified himself and provided his driver's license. (Olsen Aff. ¶ 14). Officer Olsen provided Donald Campbell with a copy of the arrest warrant and advised him that he was under arrest. (Olsen Aff. ¶ 15). Donald Campbell was handcuffed and taken to the Lake County Jail. (Olsen Aff. ¶ 15).

Donald Campbell argues that the October 23, 2003, order was expired as a matter of law and Officer Olsen would have realized that fact if he exercised reasonable diligence and made the necessary investigation. Donald Campbell contends that, as a result, he was arrested without probable cause. Thus, Donald Campbell asserts he suffered a false arrest and false imprisonment under both Indiana law and the United States Constitution.

DISCUSSION

Federal Law Claims of Wrongful Arrest
and Detention Against Olsen in his Individual Capacity

Title 42, Section 1983 authorizes a federal cause of action for any person who, acting under the color of state law, deprives another of rights secured by federal law or the United States Constitution. Donald Campbell alleges that Officer Olson violated his Fourth and Fourteenth Amendment rights because Officer Olson lacked probable cause to effectuate his arrest on April 21, 2008.

Donald Campbell's arrest came pursuant to a valid arrest

warrant. An arrest made pursuant to a valid warrant is presumptively constitutional unless the officer seeking the warrant intentionally or recklessly misstated or omitted material facts to obtain the warrant, and there would not have been probable cause had the testimony been accurate. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978); *United States v. Hoffman*, 519 F.3d 672, 675 (7th Cir. 2008). Moreover, Officer Olson enjoys qualified immunity for his conduct in applying for an arrest warrant. *Hinnen v. Kelly*, 992 F.2d 140, 144 (7th Cir. 1993). Thus, Officer Olson will be liable under section 1983 "only if a reasonably well-trained officer in Olson's position should have known that the testimony or affidavit he provided in support of the warrant would have failed to establish probable cause. *Malley v. Briggs*, 475 U.S. 335, 345 (1986)(adopting the qualified immunity standard from the standards established for the good faith exception to the exclusionary rule).

To demonstrate this, Campbell must "identify evidence in the record showing that [Officer Olson] , knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officers' determinations that probable cause existed for the arrest[]." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003)(citing *Franks*, 438 U.S. at 155-56)). "A 'reckless disregard for the truth' is demonstrated by showing that the officers entertained serious doubts as to the truth of

their statements, had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would negate probable cause." *Id.(citing United States v. Whitley*, 249 F.3d 614, 620-21 (7th Cir. 2001)).

In this case, Donald Campbell was arrested for Invasion of Privacy, based on violating the 2003 protective order, in violation of Indiana Code section 35-46-1-15.1. The crux of Plaintiff's argument is that the protective order issued in 2003, which Officer Olsen relied on to create the probable cause affidavit, was expired as a matter of law. This belief is based on Indiana Code section 34-26-5-9(e), which provides:

> An order for protection issued ex parte or upon notice and a hearing, or a modification of an order for protection issued ex parte or upon notice and a hearing is effective for two years after the date of issuance unless another date is ordered by the court.

Plaintiff argues that Officer Olsen is presumed to know that orders of protection only last two years, but he recklessly disregarded that and nevertheless relied on the 2003 order in an effort to create probable cause. As a result, Donald Campbell suggests that Olsen's arrest lacked probable cause and is thus actionable under the Fourth and Fourteenth Amendments via section 1983.

As Donald Campbell recognizes, typically these types of section 1983 cases center around the probable cause affidavit "being attacked on the basis that it contained evidence that the officers knew or should have known was false, or omitted material

information that would have led to the issuing magistrate to find probable cause lacking." (Resp. p. 13). That did not happen here. Officer Olsen provided all of the correct relevant factual information. He identified the protective order at issue arising in cause number 45D05-0201-DR-10. He stated that the protective order required Donald Campbell not to establish any communication with his daughter Carly unless accompanied by a licensed family therapist. Officer Olsen further stated that Donald Olson violated that order by calling Carly on her cell phone leaving a voice message on April 13, 2008, between the hours of 12:30 p.m. and 2:30 p.m.

What Donald Campbell complains about is that Officer Olsen should have known that a 2003 court order could not provide probable cause for a 2008 arrest. Simply put, Donald Campbell asserts that Officer Olsen is presumed to know that the 2003 Order was too old to be enforceable and thus had obvious reasons to doubt the presence of probable cause. Clearly, Officer Olsen's legal conclusion based on the facts is what is being assailed.

It is true that the Indiana Code states that protective orders are valid for two years unless another date is ordered by the court. In this case, there was another date ordered by the judge, and that date was "until modified or dissolved by the Court." Donald Campbell argues that the general language in the court order cannot be used to extend the protective order beyond two years.

While Campbell makes this argument, he fails to cite to any supporting authority that would disallow a judge from extending the duration of a protective order's validity indefinitely. Notably, Judge Pete ordered that the protection would last until the order was modified or dissolved. That order was never modified or dissolved. Thus, on its face, the order appears to still be valid, giving rise to probable cause for the arrest of Donald Campbell.

Nevertheless, whether or not probable cause existed to arrest Donald Campbell is not determinative. Before liability can be imposed upon Officer Olson, this Court must determine if Officer Olson is entitled to qualified immunity. This Court is to decide whether Officer Olson could have reasonably believed that the 2003 protective order was still valid at the time of the arrest. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). In making this decision, this Court looks to whether "a reasonable police officer in the same circumstances and with the same knowledge . . . as the officer in question could have reasonably believed that probable cause existed in light of the well-established law." *Id.* (citation omitted).

Donald Campbell can demonstrate that Officer Olson could not have reasonably believed that the 2003 protective order was valid by either presenting a closely analogous case or by presenting evidence that Officer Olson's conduct was so patently violative of the constitutional right that reasonable officials would know

without guidance from the court.  *Siebert v. Severino*, 256 648, 654-55 (7th Cir. 2001)(identifying two ways for proving that a right is clearly established: (1) a closely analogous case; or (2) obvious violation).  Donald Campbell does not demonstrate this in either way.

To start, Donald Campbell has failed to cite to a closely analogous case.  The only case Donald Campbell cites to demonstrate that Judge Pete's "until modified or dissolved by the Court" language is insufficient to overcome the two year provision in Indiana Code 34-26-5-9(e) is *City of Wabash v. Wabash County Sheriff's Department*, 562 N.E.2d 1299 (Ind. Ct. App. 1990).  While *Wabash* discusses statutory and rule construction generally, it is not closely analogous to the instant case.  *Wabash* did not concern any of the statutes involved in this case nor did it have any analogous facts.  As a result, *Wabash* is insufficient to put a reasonable officer on notice that the 2003 protective order was expired[2].

Donald Campbell also fails to demonstrate that a reasonable officer would know that the 2003 protective order was expired and could not provide the basis for probable cause without guidance from a court.  The face of the 2003 order states that it is valid until it is dissolved or modified.  It had neither been dissolved

---

[2] Assuming for the sake of argument that the order was expired pursuant to Indiana Code section 34-26-5-9(e).

nor modified. In addition, both the prosecutor and presiding magistrate signed off on the arrest warrant, which would further tell a reasonable officer that the 2003 protective order was valid. *Wollin v. Gondert*, 192 F.3d 616, 624 (7th Cir. 1999)(noting that an officer could reasonably believe that a judicial officer's arrest warrant is presumptively valid).

Ultimately, whether or not there was probable cause to arrest Donald Campbell, it is undisputed that a reasonable officer in Officer Olson's position could have believed that the 2003 protective order was still valid at the time of the arrest, and thus had a good faith belief that there was probable cause. Accordingly, Officer Olson is afforded qualified immunity from Donald Campbell's constitutional claims.

State Law Claims of False Imprisonment
and False Arrest Against Olsen in his Official Capacity

Similar to the qualified immunity afforded to Officer Olson under 42 U.S.C. section 1983, Officer Olson is entitled to a "good faith" immunity from state law claims of false imprisonment and false arrest. *Garrett v. City of Bloomington*, 478 N.E.2d 89, 94 (Ind. Ct. App. 1985). "A police officer cannot be held liable . . . if 'the officer believed in good faith that the arrest was made with probable cause and that such belief was reasonable.'" *Id.*

This Court has already determined that Donald Campbell has

failed to show that Officer Olson acted with bad faith or with an unreasonable belief in the constitutionality of his actions. *Id.* at 95. Because Officer Olson acted in good faith that the arrest of Donald Campbell was made with probable cause and because Officer Olson's belief was reasonable, he is afforded good faith immunity from Campbell's state law false arrest and false imprisonment claims.

CONCLUSION

For the reasons set forth above, the motion for summary judgment is **GRANTED**. The clerk is **ORDERED** to close this case.

**DATED:  September 28, 2011**              /s/RUDY LOZANO, Judge
                                            **United States District Court**